UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DANIEL SIMS and ANDREA SIMS | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. 2:02-CV-187 PS |
| | ) | |
| EGA PRODUCTS, INC., a | ) | |
| a Wisconsin corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Plaintiffs Daniel and Andrea Sims' Motion to Strike Affirmative Defense [Doc. 80] and Defendant EGA Products, Inc.'s Motion to Bifurcate [Doc. 90]. The Court addresses these motions in one order for its convenience. For the following reasons, the Plaintiffs' Motion is granted and EGA's Motion is denied.

**I.  BACKGROUND**

This matter arises out of claims brought by Plaintiff Daniel Sims and his wife Andrea Sims for personal injuries that Daniel Sims sustained after falling from an aerial lift allegedly manufactured by EGA. In summary, the Plaintiffs allege that on September 4, 2001, Mr. Sims was using an aerial lift platform (the "man-lift") raised into the air by a forklift in the course of his employment at Rockwell Automation Systems. The Plaintiffs allege that while Mr. Sims was standing on the man-lift, it tipped and caused him to fall six to eight feet. The fall resulted in a severe injury that has left Mr. Sims in a persistent vegetative state. Andrea Sims also raises a loss of consortium claim.

**A.     Procedural History – Facts Germane to Motion to Strike Affirmative Defense**

The Plaintiffs  filed their Complaint on May 1, 2002 naming EGA as the sole defendant.

Plaintiffs served EGA on June 17, 2002.  EGA initially failed to respond to the Complaint and the Clerk entered the default on July 15, 2002. (Doc. 6).  On January 3, 2003, Magistrate Judge Rodovich issued a Report and Recommendation recommending that the Court enter judgment in favor of the plaintiffs for $31.2 million (the "R&R"). (Doc. 18).  EGA received the R&R on January 13, 2003 and appeared on January 17, 2003. (Doc. 19).  EGA filed its motion to set aside the entry of default on January 22, 2003, and its objections to the R&R on February 11, 2003. (Docs. 23, 24, 28).  We note that EGA did not seek leave to file an answer or any other pleading concurrently with its motion to set aside entry of default and its objections.

This case was originally assigned to Judge Rudy Lozano.  After EGA filed its motion to set aside the clerk's entry of default, Judge Lozano issued an Order allowing the parties to conduct limited discovery as to the facts leading up to the entry of default, a fuller record being necessary to decide that issue.  During this discovery process, in May 2003, the Plaintiffs disclosed Eric Egas as the other Rockwell employee involved in the accident (he was driving the forklift).  In the meantime, on September 30, 2003, this case was reassigned from Judge Lozano to the undersigned.

On March 9, 2004, Magistrate Judge Rodovich issued an order denying EGA's motion to set aside the entry of default.  (Doc. 61).  However, on March 19, 2004, EGA objected to Magistrate Judge Rodovich's March 9, 2004 order.  An oral argument on the objections was heard by the Court on April 21, 2004, and at the conclusion of the argument, the parties advised the Court that prior to the Court ruling on the objections, they would like an opportunity to take the case to mediation.  The parties were unsuccessful in settling the case before a mediator. One final attempt to settle the case took place before the Honorable Rudy Lozano on September 23, 2004, and it, too, was unsuccessful.   On October 5, 2004, this Court sustained EGA's objections

to Magistrate Judge Rodovich's order and granted EGA's motion to set aside the entry of default. At no time during this discovery and mediation process did EGA seek leave to file its answer and/or affirmative defenses.

EGA filed its answer to Sims' complaint on October 13, 2005, and EGA included the following affirmative defense:

> Defendant EGA Products, Inc, by counsel, states that the damages claimed in the Complaint were proximately caused in full or in part by the following "non-party," as "non-party" [stet] is defined by Indiana law:
>
> Eric Egas

**B.    Facts Germane to the Motion to Bifurcate**

On September 4, 2001, Daniel Sims and Eric Egas, both Rockwell employees, used the man-lift to obtain boxes off of a high shelf. The man-lift attaches to the forks of a forklift truck which is then used to raise the man-lift to the desired height. Mr. Sims stood on the man-lift while Mr. Egas positioned and raised the forks of the forklift with the man-lift attached. As Mr. Sims moved to his left to better reach the boxes, the man-lift tipped causing Mr. Sims to fall over 10 feet to the ground, striking his head on the concrete floor.

The parties do not dispute that Mr. Sims suffered grievous injuries as a result of his fall from the man-lift. Indeed, Mr. Sims suffered a severe brain injury which has left him in a persistent vegetative state. Mr. Sims cannot communicate with family or friends and requires 24 hour care. He has also been diagnosed with complications of congestive heart failure, renal failure, pneumonia, pressure sores, and ulcers.

The parties do dispute, however, how the accident occurred. In essence, EGA argues that Sims and Egas did not properly secure the man-lift to the forklift and, if they had, the accident

would have been prevented. In contrast, the Plaintiffs contend that the man-lift itself was defective and intend to produce an expert report at trial in support of this argument.

## II.  DISCUSSION

### A.   Motion to Strike

The Plaintiffs move to strike EGA's affirmative defense naming Eric Egas as a responsible nonparty as that defense is set forth in Indiana Code § 34-51-2-16. Because EGA filed its affirmative defense well beyond the time limit required by this code section as well as outside the running of the statute of limitations for the Plaintiffs to join Mr. Egas as a party to the lawsuit, we grant the Plaintiffs' motion.

Indiana law provides that:

> [I]f the defendant was served with a complaint and summons more than one hundred fifty (150) days before the expiration of the limitation of action applicable to the claimant's claim against the nonparty, the defendant shall plead any nonparty defense not later than forty-five (45) days before the expiration of the limitation of action. The trial court may alter these time limitations or make other suitable time limitations in any manner that is consistent with:
>
> (1)   giving the defendant a reasonable opportunity to discover the existence of a nonparty defense; and
>
> (2)   giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitations applicable to the claim.

Ind. Code § 34-51-2-16. This rule "strikes a balance between providing a reasonable opportunity to the defendant to discover and assert a nonparty defense and providing a reasonable opportunity to the claimant to join the alleged nonparty before expiration of the statute of limitations. *Kelly v. Bennett*, 792 N.E.2d 584, 586 (Ind. App. 2003). However, the trial court's ability to extend the time-period for amendment "is restrained by the outer limits set by the

expiration of the applicable period of limitations." *McClain v. Chem-Lube Corp.*, 759 N.E. 2d 1096, 1105 (Ind. App. 2001).

The statute of limitations for personal injury actions in Indiana is two years. IC § 34-11-2-4. Accordingly, the statute of limitations for any action relating to Mr. Sims's accident ran on September 4, 2003. Thus, for purposes of our analysis, all dates trigger off of September 4, 2003.

EGA was served with the complaint on June 17, 2002, 440 days before the expiration of the statute of limitations. EGA appeared in the action January 19, 2003, 228 days before the expiration of the statute of limitations, and filed its motion to set aside entry of default a mere three days later. However, EGA did not seek leave to file an answer at that time. The parties conducted discovery while the Court considered EGA's motion to set aside the clerk's entry of default. According to the Plaintiffs, they disclosed Egas's involvement in the accident on May 19, 2003, 108 days before the expiration of the statute of limitations. Still, EGA did not seek leave to file its answer and affirmative defense. Indeed, EGA did not file its answer and affirmative defense until October 13, 2004, 395 days after the expiration of the statute of limitations.

EGA correctly notes that this case is in a relatively unique procedural posture in that there was protracted procedural motion practice between the time that the Plaintiffs served the complaint upon EGA and the time the District Court ruled on EGA's motion to set aside entry of default. However, that posture is largely the result of EGA's initial failure to timely respond to the Plaintiffs' complaint. Further, we note that EGA has not cited (nor are we aware of) any caselaw requiring EGA to wait until the Court had ruled on EGA's motion to set aside entry of default prior to seeking leave to file its answer and/or affirmative defense. Indeed, parties

routinely seek leave to file their answers and affirmative defenses before the District Court has ruled on a motion to set aside entry of default. *See, e.g.*, *Middleton v. North Shore Movers, Inc.*, 2004 WL 783157, *2 (N.D. Ill. Jan. 13, 2004); *Abdul Wadood v. Wright*, 1995 WL 432301, * 1 (N.D. Ind. Jan. 24, 1995).

Indeed, allowing EGA to assert its affirmative defense at this late state would violate the portion of the statute requiring the Court to allow the Plaintiffs a reasonable opportunity to add Mr. Egas as a nonparty. The statute of limitations has long since expired. Thus, the Plaintiffs have **no** opportunity to add Mr. Egas.

Nevertheless, EGA argues that the Plaintiffs will suffer no prejudice by the affirmative defense in that Plaintiffs could not have maintained an action against Egas because claims against Daniel Sims's coworker would fall under the exclusive jurisdiction of the Indiana Worker's Compensation Board (the "WCB"). Whether or not the Plaintiffs can prevail in an action against Egas is not relevant to whether we allow EGA to assert its untimely affirmative defense. *See, generally, McClain*, 759 N.E.2d 1096. EGA has not cited any case, nor are we aware of any, creating such an exception.

In *McClain*, the plaintiff brought a products liability action against the manufacturer and seller of an anti-spatter compound that the plaintiff used during the course of his employment as a welder for the Dana Corporation. *Id*. at 1096. Six months after the expiration of the statute of limitations, the manufacturer moved to amend its answer to include a nonparty defense naming the Dana Corporation as a culpable nonparty. *Id*. at 1105. The Court refused to allow the amendment noting that the manufacturer "had ample opportunity to discover and assert the existence of its nonparty defense, and thus was not entitled to receive modification of the time frame set forth in Ind. Code § 34-51-2-16." *Id*. at 1106. Similarly, in this case, EGA had plenty

of time in which to assert its nonparty defense before the statute of limitations ran and should not be rewarded for its lack of diligence.[1]

Simply, EGA had ample opportunity to seek leave to plead its potential third-party defense between the time it received the Plaintiffs' discovery responses identifying Eric Egas and the expiration of the time limitations set forth under Indiana Law.  Instead, EGA did nothing until 395 days after the running of the statute of limitations.  The Plaintiffs motion, therefore, is GRANTED and the affirmative defense naming nonparty Eric Egas is STRICKEN.

**B.      Motion to Bifurcate**

Next, EGA asks the Court to bifurcate trial in this matter to separately address liability and damages.  EGA asserts that it will be prejudiced at the liability stage by evidence of the grievous injuries suffered by Mr. Sims and that separate trials will promote judicial economy. We disagree.

>   Fed. R. Civ. P. 42(b) governs bifurcation of issues at trial.  It provides:
>
>>    The court, in furtherance of convenience or to avoid prejudice, or
>>    when separate trials will be conducive to expedition and economy,
>>    may order a separate trial . . . of any separate issue . . . always
>>    preserving inviolate the right of trial by jury as declared by the
>>    Seventh Amendment to the Constitution or as given by a statute of
>>    the United States.

Fed. R. Civ. P. 42(b).  The granting of a separate trial is not mandatory, but rests in the discretion of the Court.  *Ammesmaki v. Interlake Steamship Co.*, 342 F.2d 627, 631 (7th Cir. 1965).  The Seventh Circuit has set forth three criteria to guide the District Court in its analysis: 1) separate trials must avoid prejudice to a party and/or promote judicial economy; 2) bifurcation cannot

---

[1] We note that the *McClain* court did not specifically address whether or not the plaintiff could maintain an action against his employer *vis a vis* the exclusive jurisdiction of the WCB. However, we are satisfied that there is no current exception to the time limitations set forth in Section 34-51-2-16 where the underlying statute of limitations has already passed.

unfairly prejudice the non-moving party; and 3) separate trials cannot be granted if doing so would violate the Seventh Amendment. *Houseman v. United States Aviation Admin.*, 171 F.3d 1117, 1121 (7th Cir. 1999).

  A single trial encompassing both damages and liability will not unduly prejudice EGA. EGA argues that it will suffer prejudice if this matter goes to trial in the traditional manner with both liability and damages adjudicated at the same time and by the same jury. Essentially, EGA believes that the jury will be so overwhelmed by the gravity of Mr. Sims's injuries that it will be unable to properly consider EGA's position that Mr. Sims's own conduct caused his fall. Although EGA cited several cases in support of this position, EGA did not cite any Seventh Circuit authority requiring us to bifurcate the issues under these circumstances. Indeed, hundreds of trials in which plaintiffs have suffered severe personal injuries go forward as one single phase. *See*, *e.g.*, *Fetz v. E&L Truck Rental Co.*, 670 F. Supp. 261 (S.D. Ind. 1987) (permanent vegetative state); *see also Svege v. Mercedes Benz Credit Corp.*, 329 F. Supp. 2d 283, 284 (D. Conn. 2004) (plaintiff's death orphaned two children); *Layman ex rel Laymen v. Alexander*, 343 F. Supp. 2d 483 (W.D.N.C. 2004) (severe brain injuries); *Aldous v. Honda Motor Co.*, 1996 WL 312189 (N.D.N.Y. May 30, 1996) (car accident injuries). At the end of the day, we do not agree that the jury's knowledge of Mr. Sims's injuries will be so prejudicial to EGA as to require bifurcation.[2]

  Further, we do not believe that bifurcation will promote judicial economy. EGA urges

---

[2] For example, in Anderson v. Griffin, case no. 2:98-cv-565, *affirmed in Anderson v. Griffin*, 397 F.3d 515 (7th Cir. 2005), a case tried in this court, a plaintiff sustained horrendous injuries when her car was struck by a tractor-trailer whose drive shaft suddenly failed. Plaintiff had sued the company who serviced the drive shaft some two weeks prior to the accident. Despite the extremely serious nature of plaintiff's injuries, the jury returned a general defense verdict proving the point that a jury can set aside sympathies for the plaintiff and decide the case on its merit.

that bifurcating the issues of liability and damages will shorten the length of the trial. However, "bifurcation will normally only shorten the total length of a trial if the defendant *prevails* on the issue of liability and thereby renders a trial on damages unnecessary." *Fetz*, 670 F. Supp. at 266 (emphasis in original). If EGA does not prevail on the merits at the liability stage (which we cannot say that it will), we see no other way in which separate trials will promote judicial economy. Indeed, there is risk of duplicate witnesses presenting duplicate testimony at both phases.

Without obvious prejudice to EGA necessitating a bifurcated trial and no real savings in judicial time and resources to be gained from a two-stage trial, EGA cannot meet the first-prong of the Fed. R. Civ. P. 42(b) test. Accordingly, EGA's Motion to Bifurcate is DENIED.

### III.  CONCLUSION

For the foregoing reasons, Daniel and Andrea Sims' Motion to Strike Affirmative Defense [Doc. 80] is **GRANTED**. EGA's Motion to Bifurcate [Doc. 90] is **DENIED**.

**SO ORDERED.**

ENTERED: May 9, 2005

 s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT